IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JERRY P. STEVENS,<br>         PLAINTIFF,<br><br>V.<br><br>CARDWORKS SERVICING, LLC,<br>         DEFENDANT, AND<br>ADVANTA BANK CORP.,<br>         CO-DEFENDANT. | § § § § § § § § § § § | CASE NO. 1:11-CV-00397-LY<br>Trial By Jury Demanded<br>Civil Rights Violations |

## VERIFIED MOTION TO COMPEL A DISCOVERY RESPONSE

COMES NOW the Plaintiff, Jerry P. Stevens. Plaintiff respectfully moves this Honorable Court to compel the Defendant CardWorks Servicing, LLC., and the Co-Defendant, Advanta Bank Corp. to comply with discovery, pursuant to FED. R. CIV. P. 37(a)(3)(B)(iii). Both the Defendant and Co-Defendant have submitted evasive non-responses to Plaintiff's First Set of Interrogatories and Plaintiff's First Request for Production of Documents served upon them, thus these responses must be treated as a failure to disclose, answer, or respond, pursuant to FED. R. CIV. P. 37(a)(4). Plaintiff certifies to the Court pursuant to FED. R. CIV. P. 37(a)(1) that he has in good faith, in writing via certified mail, telephone calls, and emails, attempted to confer with the attorney representing the Defendant and Co-Defendant regarding their failure to comply with discovery in an effort to obtain answers to Plaintiff's first set of interrogatories, before Plaintiff filed this motion with the Court.

*Discussion- Arbitration Cannot Be Compelled*

Both the Defendants received Plaintiff's First Set of Interrogatories on August 4, 2011, and both Defendants received Plaintiff's First Request for Production of Documents on August 18, which Plaintiff served pursuant to FED. R. CIV. P. 33. On September 6, 2011, Plaintiff received both Defendants' responses to the interrogatories, wherein they refused to answer any of the interrogatories. On September 26, 2011, Plaintiff received both Defendants' responses to the requests for production of documents, wherein they refused to provide any of the documents requested. Although these interrogatories and requests for production are standard for a plaintiff to serve a defendant in a DCPA/FCRA case, both Defendants have submitted frivolous, boiler-plate, cookie-cutter style objections to the discovery requests, without specifying the nature of their objections. It is interesting to note that as part of their boiler-plate style responses, they often failed to even switch out the names of the Defendant and Co-Defendant in their identical answers. For example, in their response to Plaintiff's First Request for Production of Documents, Advanta Bank Corp. apparently refers to themselves as CardWorks Servicing in the header on page 1, thus it could be construed that Advanta did not even answer at all.

Both Defendant and Co-Defendant listed several meritless objections in their prefaces, however their main objection which was cited in each non-answer to each interrogatory and each request for production as the reason why they are not answering was, "this Court does not have subject matter jurisdiction. Defendant CWS/Co-Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant CWS/Co-Defendant ABC elects to exercise those

arbitration rights, and Defendant CWS/Co-Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant CWS/Co-Defendant ABC those rights." They attached what appears to be an excerpt from an alleged contract which Plaintiff denies ever seeing or signing. Please see exhibits A and B, which are the Defendant's and Co-Defendant's responses to the interrogatories, respectively. Please also see exhibits C and D, which are the Defendant's and Co-Defendant's responses to the requests for productions, respectively.

    Furthermore, on September 6, 2011, Defendant CardWorks Servicing, LLC.'s attorney informed Plaintiff via certified mail that the Defendant intends to file a "motion to compel arbitration" if Plaintiff does not agree to sign a form to consent to arbitration. In paragraph 35 of the excerpt of the "contract" that Defendant and Co-Defendant allege that Plaintiff has signed, the first line of this so-called "Arbitration Disclosure" states that "you agree that if a dispute of any kind arises out of your application for credit or out of the existence or use of this Agreement or your Account, either you or we or any other party that may be involved can choose to have that dispute resolved by binding arbitration. If arbitration is chosen, it will be conducted pursuant to the Code of Procedure of the National Arbitration Forum."

    Firstly, Plaintiff denies ever seeing this excerpt in any contract or signing anything containing such an excerpt. Secondly, this is not a dispute arising from any credit application, nor from the existence or use of any alleged account. This suit is not about any alleged account or any alleged debt. This suit is about Defendant's and Co-Defendants violations of Plaintiff's civil rights due to their violations of the Fair

Credit Reporting Act, Fair Debt Collections Practices Act, and The Telephone Consumer Protection Act. Thirdly, Defendant and Co-Defendant are going to have a very difficult time getting the National Arbitration Forum arbitrate for them, or trying to find any arbitration entity that would conduct proceedings pursuant to the Code of Procedure of the National Arbitration Forum, or the NAF, considering that the NAF no longer exists in its prior business structure, and was forced to shut down its consumer/creditor negotiations by the Minnesota Attorney General in 2009. The NAF has been barred from any credit card/consumer arbitrations and they shut down pursuant to a settlement agreement as a result of being sued by Lori Swanson, the Attorney General for the State of Minnesota in July of 2009, due to deceptive and fraudulent business practices. Please see exhibit E, the official press release by the State of Minnesota Attorney General's Office and Consent Decree issued on July 14, 2009, exhibit F, the introduction of Lori Swanson's lawsuit against the NAF which summarizes the fraudulent practices of the NAF, and exhibit G, the diagram of the business ownership involvement structure of the former NAF with hedge funds and debt collection companies, which was submitted on page 11 of the Minnesota Attorney General's lawsuit.

There were no existing or legitimate disputes between the parties at the time the Defendant and Co-Defendant allege that Plaintiff agreed to such a provision, which Plaintiff denies ever agreeing to. If this compulsory arbitration clause *was* part of any original written agreements between the parties, which Plaintiff denies any such agreement exists, it violates House Resolution 1873 and S. 987, the "Arbitration

Fairness Act of 2011," which would amend Title 9, the "Federal Arbitration Act." This amendment would make pre-dispute mandatory arbitration agreements in consumer credit contracts invalid and unenforceable. This amendment has been introduced because, as the author states, "Mandatory arbitration undermines the development of public law because there is inadequate transparency and inadequate judicial review of arbitrators' decisions."

Furthermore, any arbitration forums chosen by the Defendant or Co-Defendant are unfair and unconstitutionally violate Plaintiff's rights to due process, and they constitute unfair trade practices:

"The arbitration agreement in a credit cardholder agreement is unconscionable and unenforceable, to the extent it prohibits class treatment of small individual claims, where presented as a 'take it or leave it' clause with no opportunity for negotiation" *Szetela v. Discover Bank, No. G029323 (Cal. 4th App. Dist. April 22, 2002).*

The purported arbitration clause is not enforceable because it unconscionably requires the respondent to arbitrate in a distant state under an organization and rules designed to favor the purported lender:

"The claimant has no authority to unilaterally change any terms of any agreements that may or may not exist between the claimant and respondent. The post-agreement, unilateral arbitration clause is unenforceable because it exceeds the unilateral right of one party to make subsequent, substantive, changes to the agreement, violates the implied covenant of good faith and fair

dealing and because the resulting jury waiver was not unambiguous and unequivocal, as required to waive a constitutional right." *Patterson v ITT Consumer Financial Corp., 14 Cal. App. 4th 1659, 18 Cal Rptr 2d 563 (Cal App. 1993)*.

In addition, mandatory arbitration may not be imposed without the meaningful consent of both parties. The United States Supreme Court has repeatedly stressed that arbitration under the [Federal Arbitration Act (F.A.A.)] is a matter of consent, not coercion. [1]

Consent cannot be compelled under any circumstances, whether it has to do with an attempt to compel consent to arbitration or an attempt to compel consent to any other agreement. The coercive environment destroys the very "evidence" it purports to create. FED. R. CIV. P. 8(c) (duress); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (jurisdiction doesn't flow from fraud, undue influence, or overwhelming bargaining power); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978) (addressing coercion specifically engaged by the legal profession); *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977) (addressing coercion specifically engaged by the legal profession); U.C.C. § 1-103 (1977) (coerced transaction is no transaction); *Escobedo* (coerced confession is not evidence); *Miranda* (same); 1 PAGE §§ 5.7, 15.11 (coerced will is not evidence); BOGERT §§ 42 at 434, 44 at 452 and n.16 (coerced trust is not evidence); *Pollock I*, 157 U.S. at 553-54, 15 S. Ct. at 679 (1st ¶ of opinion) (same—non-agreement (non-consent) by even one beneficiary prevents amendment to

---

[1] *Allied-Bruce Terminex Co. v. Dobson* 513 U.S. 265, 270 (1995); *First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938, 944 (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc.* 514 U.S. 52, 55-56 (1995); *Volt Info. Sciences, Inc. v. Board of Trustees* 489 U.S. 468,478 (1989); *AT&T Tech., Inc. v. Communications Workers* 475 U.S. 643, 648 (1986).

trust agreement); *United States v. Booker*, 543 U.S. 220 (2005) ("evidence" not presented at trial and not agreed to is inadmissible for sentencing). Choice of law is an element of the deal, *Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213 (1827), i.e., choice of law cannot be compelled, either.

Defendant and Co-Defendant would have the Court erroneously believe that Plaintiff has signed away his rights to due process, as an irrebuttable presumption. Regarding irrebuttable presumptions, please see *Elkins v. Moreno*, 435 U.S. 647 (1978); *Weinberger v. Salfi*, 422 U.S. 749 (1975) (part III discusses why *Salfi* is distinguished); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632 (1974); *Vlandis v. Kline*, 412 U.S. 441 (1973); *Stanley v. Illinois*, 405 U.S. 645 (1972). [2]

*Discussion- Defendants Have Acted in Bad Faith*

On September 13, Plaintiff responded via certified mail to Defendant CardWorks Servicing's attorney, Keith Wier, regarding Defendant's September 2, 2011 letter demanding that Plaintiff agree to arbitration or Defendant would file a "motion to compel arbitration." Plaintiff's letter was received by Mr. Wier on September 15. Plaintiff briefly explained the issues above, enclosed a draft copy of this motion, and declined the Defendant's "offer" for arbitration, as the arbitration game is always notoriously rigged in favor of creditors and debt collectors. Plaintiff made clear that this letter was to be construed as attempt to confer pursuant to FED. R. CIV. P. 37(a)(1) regarding his clients' failure to comply with discovery, and Plaintiff gave both Defendants an additional 10 days from receipt of the letter to submit

---

[2] Not all irrebutable presumptions violate Due Process. *See, e.g., Michael H. v. Gerald D.*, 491 U.S. 110 (1989); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976).

proper responses to discovery. Plaintiff gave notice that a motion to compel discovery would be filed in 10 days if Plaintiff received no response. Plaintiff also made it very clear that he was willing to consider any offer that either the Defendant or Co-Defendant wished to make at this time in order to end the litigation.

On September 30, 2011, Plaintiff left a message on Mr. Wier's voice mail asking if he had looked over the letter and the draft motion to compel discovery, and if his clients needed more time to produce responses to the discovery. On October 4, 2011, Plaintiff still had not received a response to either the voice mail or Plaintiff's certified letter regarding this matter, so Plaintiff wrote another certified letter and sent an email to Mr. Wier informing him that he had received no response to Plaintiff's previous certified letter and that if Mr. Wier did not respond within 5 days of receipt of this second certified letter, then Plaintiff would have no choice but to proceed with a motion to compel discovery. Plaintiff also made a written offer in this second certified letter in a good-faith effort to begin negotiations for settlement with the Defendants, even though a written offer is not due until July 16, 2012, according to the Scheduling Order. Mr. Wier finally responded by email to Plaintiff that same day, October 4, stating that, "You are on my list to call. Will do so today." Mr. Wier wrote in a second email a few hours later that he was waiting on a call-back from his clients and then he would call Plaintiff to discuss the matter. However, Mr. Wier never called. On October 10, 2011, Plaintiff emailed Mr. Wier again, asking if his clients had considered the offer that Plaintiff had made so that negotiations could begin to end the litigation. On October 11, 2011, Mr. Wier emailed Plaintiff stating, "I

am trying to reach client on this. Give me another day or two. Thanks." Since that day, Plaintiff has emailed Mr. Wier two more times asking for a response, the most recent email to Mr. Wier being November 1, 2011. Mr. Wier has not responded, leaving Plaintiff with no choice other than to file this Verified Motion to Compel Discovery Response.

## Conclusion

Plaintiff does not agree to any arbitration at this time especially in light of the well-documented fraudulent and deceptive practices of arbitration entities in regards to consumer/creditor and consumer/debt-collector relations. Furthermore, Defendant's and Co-Defendant's frivolous objection to discovery that the Court has no subject matter jurisdiction due to this alleged "agreement" that Plaintiff denies signing, is beyond the scope of the pleadings at this stage in the litigation. Neither Defendant has filed motions with the Court to dismiss this case based on any alleged lack of subject matter jurisdiction of the Court, nor have they offered any documentation to support this meritless objection that they made in their non-responsive answers to discovery. Rather, they have filed an answer to this suit with the Court stipulating to many of Plaintiff's assertions, as well as they have stipulated to the Court's jurisdiction.

It appears that the Defendants and/or their attorney are acting in bad faith and attempting to evade discovery as they most certainly know that the NAF no longer exists and that "pre-dispute mandatory arbitration agreements" in consumer credit contracts are invalid, void, and unenforceable pursuant to pending legislation

as well as multiple Supreme Court decisions. Furthermore there is no evidence that Plaintiff has ever agreed to or signed such a contract which would be void under law even if Plaintiff had signed such an agreement. They appear to be attempting to evade discovery by submitting frivolous, boiler-plate excuses to discovery such as, "overly broad and unduly burdensome," and, "not relevant to the claim or defense of any party," etc., with no further clarity, even though the interrogatories and requests for production are quite specific, relevant, and very standard in DCPA/FCRA cases. It also appears that the Defendants and/or their attorney are acting in bad faith due to the long and well-documented history of Mr. Wier's lack of communication and failure to respond to Plaintiff's certified letters, emails, and phone calls. Mr. Wier's failure to communicate with Plaintiff has been documented in a prior affidavit filed by the Plaintiff in this case. This seems to be a delaying tactic for the purpose of running the Plaintiff out of time regarding deadlines of the scheduling order. The delaying tactics of Mr. Wier along with the Defendant's and Co-Defendant's refusal to answer any interrogatories or produce any documents amounts to nothing more than an effort to subvert the discovery process. Discovery must proceed in a rapid fashion with the voluntary exchange of information and documents.[3]

Therefore, the Plaintiff respectfully moves this Honorable Court to order both Defendants to comply with discovery pursuant to this Court's Scheduling Order issued August 18, 2011, and FED. R. CIV. P. 26, 33, and 34, and that the Court impose sanctions on the Defendants and/or their attorney as the Court deems appropriate.

---

[3] *Saleh v. Moore*, 95 F. Supp. 2d 555 (E.D. Va. 2000), and *Rambus v. Infineon Technologies*, AG, 2001 U.S. Dist. LEXIS 11870 (E.D. Va. 2001)

Respectfully submitted,

/s/ Jerry P. Stevens
Jerry P. Stevens
1516 South Lamar #112
Austin, Texas 78704
(512) 447-6556

## Verification

Per 28 U.S.C. §1746, I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that I am competent to make this Verification, that I have personal knowledge of the facts asserted in this Motion, and that the facts are true and correct.

Executed on 7th day of November 2011.

/s/ Jerry P. Stevens
Jerry P. Stevens, Declarant

## CERTIFICATE OF SERVICE

By my signature below, I certify that on this the 7th day of November, 2011, I served a true and correct copy of Plaintiff's First Discovery Status Report and First Set(s) of Interrogatories to Defendant and Co-Defendant by certified mail on the following:


Keith Wier, Attorney for Defendant Cardworks Servicing, LLC., and Co-Defendant Advanta Bank Corp.
24 Greenway Plaza, Suite 1700
Houston, TX 77046


VIA CERTIFIED MAIL: 7010 2780 0000 9049 9134
On November 7, 2011.

/s/ Jerry P. Stevens
Jerry P. Stevens