# Plaintiff's

# Exhibit B

*"Co-Defendant Advanta Bank Corp.'s Response to Plaintiff's First Set of Interrogatories"*

BUSH & RAMIREZ, L.L.C.
ATTORNEYS AT LAW
24 GREENWAY PLAZA, SUITE 1700
WESLAYAN AT SOUTHWEST FREEWAY
HOUSTON, TEXAS 77046

TEL: (713) 626-1555
FAX: (713) 622-8077

W. KEITH WIER
kwier@bushramirez.com

BOARD CERTIFIED IN CONSUMER AND COMMERCIAL LAW
by the Texas Board of Legal Specialization

September 2, 2011

***Via Certified Mail RRR 7007 3020 0000 4701 0014***
Jerry P. Stevens
1516 South Lamar # 12
Austin, Texas 78704

Re: Case No. 1:11-cv-00397-LY; *Jerry P. Stevens v. CardWorks Servicing, LLC and Advanta Bank Corp.*; In the United States District Court for the Western District of Texas, Austin Division

Dear Mr. Stevens:

Please find enclosed the following document(s) in the above-referenced matter:

1) Defendant, Advanta Bank Corp.'s Objections and Answers to Plaintiff's First Set of Interrogatories.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Tammy Oates
Secretary to Hollis G. Price, Jr.

/tdo

Enclosure

G:\06550\9351\Stevens\Correspondence\Stevens.004 - Ans to ROGs Advanta.doc

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JERRY P. STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>CARDWORKS SERVICING, LLC, and<br>ADVANTA BANK CORP.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action File No. 1:11-cv-00397-LY |

**DEFENDANT, ADVANTA BANK CORP.'S**
**<u>OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>**

TO: Plaintiff, Jerry P. Stevens, 1516 South Lamar #12, Austin, Texas 78704.

COMES NOW, Defendant, ADVANTA BANK CORP. (hereinafter referred to as "ABC"), who files and serves the following Objections and Answers to Plaintiff's First Set of Interrogatories in accordance with the *Federal Rules of Civil Procedure*.

Respectfully submitted,

**BUSH & RAMIREZ, L.L.C.**

W. Keith Wier; State Bar No. 21436100
Federal ID: 7930
Hollis G. Price, Jr.; State Bar No. 16290020
Federal ID: 1149095
24 Greenway Plaza, Suite 1700
Houston, Texas 77046
713/626-1555 Telephone
713/622-8077 Facsimile

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record via facsimile and/or certified mail return receipt requested on this the 2nd day of September, 2011, as follows:

***Via Certified Mail RRR 7007 3020 0000 4701 0014***
Jerry P. Stevens
1516 South Lamar #12
Austin, Texas 78704

Hollis G. Price

**DEFENDANT, ADVANTA BANK CORP.'S OBJECTIONS & ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**PRELIMINARY STATEMENT**

(A) The following responses are based upon information presently available to Defendant that it believes to be correct. Said responses are made without prejudice to Defendant's right to utilize subsequently discovered facts.

(B) No incidental or implied admission of fact by Defendant is made by the responses below. The only admissions are expressed admissions. The fact that Defendant has answered any request, any interrogatory, or produced any document herein may not properly be taken as an admission that it accepts or admits the existence of any fact set forth or assumed by such request, or that such response constitutes admissible evidence. The fact that Defendant has answered part of all of any interrogatory is not intended to and shall not be construed to be a waiver by Defendant of all or any part of any objection by Defendant to the admissibility of evidence at trial or the relevance of the response.

(C) The responses to the interrogatories may be supplemented by Defendant's further investigation and acquisition of information which it does not either possess or recall at this time. However, any such further supplementation shall be made only in accordance with the Federal Rules of Civil Procedure.

(D) Defendant shows that, notwithstanding any of the "definitions" or preliminary instructions contained within Plaintiff's Interrogatories, Defendant will provide responses which are required pursuant to the Federal Rules of Civil Procedure.

(E) As to any of the "definitions" which precede Plaintiff's Interrogatories and which seek information or documents which include trial preparation and/or privileged materials or communications, Defendant objects.

(F) The information supplied in these answers is not based solely upon the knowledge of the executing party, but includes knowledge of the party, its agents, its representative and attorneys, unless privileged.

(G) The word usage and sentencing structure may be that of the attorney assisting in the preparation of the answers and, thus, do not necessarily purport to be the precise language of the existing parties.

(H) The objections asserted by Defendant below are asserted in good faith, based upon counsel's evaluation of Defendant's discovery obligations under the Federal Rules of Civil Procedure. Nevertheless, Defendant, through counsel, offers and stands ready to confer with the Plaintiff's counsel in an effort to resolve or narrow, to the greatest extent possible, any dispute between the parties concerning Defendant objections.

(I) This preliminary statement is incorporated in each of the responses set forth below.

**DEFENDANT'S**
**GENERAL OBJECTIONS TO PLAINTIFF'S INTERROGATORIES**

Defendant objects to the information sought in Plaintiff's Interrogatories (hereinafter, "interrogatories") on the grounds that they seek disclosure of Defendant's confidential and proprietary business information. Defendant further objects to these interrogatories to the extent that they seek the disclosure of information which would unduly invade the privacy rights of persons not party to this litigation or to whom Defendant has a duty of confidentiality.

Defendant objects to these interrogatories to the extent they seek the discovery of information prepared in anticipation of litigation, protected by the work product doctrine and privilege, attorney-client privilege or which information is beyond the scope of permissible discovery under the Federal Rules of Civil Procedure. Defendant objects to the release of any

information protected by the attorney-client privilege or the attorney work product doctrine. Defendant construes these interrogatories to exclude documents, information and communications exchanged with counsel in this and other litigation.

Defendant objects to these interrogatories as many terms utilized are without definition and are capable of numerous interpretations. These interrogatories would have Defendant speculate at its detriment as to the definition of said terms and, therefore, cannot properly respond.

Defendant objects to the Plaintiff's instruction that these interrogatories are deemed to be continuing as going beyond the scope of the Federal Rules of Civil Procedure. Defendant will supplement its answers, if required to do so.

Subject to, and without waiving the above and foregoing objections, Defendant provides the following responses to Plaintiff's First Interrogatories:

Interrogatory No. 1: Identify the names, addresses, and telephone numbers of all persons who supplied information responsive to these interrogatories.

**Response:   Defendant ABC objects to Interrogatory No. 1 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights.**

Interrogatory No. 2: Identify the names, addresses, and telephone numbers of all persons who have personal knowledge of any of the facts, events, or matters that are alleged in Plaintiff's complaint, your answer, anticipated answer and/or defenses thereto and describe and explain your understanding of the matters on which the persons named have knowledge.

**Response: Defendant ABC objects to Interrogatory No. 2 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this interrogatory as cumulative or duplicative and the information can be obtained from another source that is more convenient and less burdensome.**

Interrogatory No. 3: Identify all correspondence or documents that refer or relate to any correspondence or communication between you and any other person relating or referring to the facts, acts, events, or matters alleged in Plaintiff's complaint, or your answer, anticipated answer and/or defense thereto.

**Response: Defendant ABC objects to Interrogatory No. 3 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights.**

Interrogatory No. 4: Identify each person whom you may call as an expert witness at trial including name, business address, and telephone number, and the substance of the facts and opinions to which the expert may testify, and summarize the grounds for each opinion.

**Response: Defendant ABC objects to Interrogatory No. 4 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement**

**which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this interrogatory as this request seeks information in an impermissible form. Expert identification and release of expert reports and opinions are subject to the Courts scheduling order in this case and will be provided in accordance with that order.**

Interrogatory No. 5: Identify the names, address, and telephone numbers of all persons who accessed, obtained, used, viewed and/or came into possession of Plaintiff's consumer credit report which you accessed monthly between May 2007, and March 2011.

**Response: Defendant ABC objects to Interrogatory No. 5 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights.**

Interrogatory No. 6: Please explain and describe the direct access terminal(s) used in reporting to the credit bureau made available to you on between May 2007, and March 2011.

**Response: Defendant ABC objects to Interrogatory No. 6 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this Request as overly broad and unduly burdensome in that it is not limited in time and overly broad in scope. In addition, this Request is objectionable in that it is not relevant because it is not reasonably calculated to lead to the discovery of admissible information on the issues of liability or damages.**

Interrogatory No. 7: Please explain and describe each provision in your subscriber contract, which was in force and existence with Trans Union, LLC f/k/a Trans Union Corporation, Experian, and Equifax, between August 1, 2010 and August 1, 2011.

**Response: Defendant ABC objects to Interrogatory No. 7 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights.**

Interrogatory No. 8: Please list, explain, and describe documents known to you or believed by you to exist concerning the events described in Plaintiff's complaint, or concerning any event which is the subject of any defense you have raised to this lawsuit.

**Response: Defendant ABC objects to Interrogatory No. 8 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this Interrogatory as overly broad and unduly burdensome as it calls for a narrative more appropriate for a deposition.**

Interrogatory No. 9: Please identify each employee or non-employee expert witness you believe may have formed any opinion or consulted with you about the facts or basis of this lawsuit or any defense or allegation you have raised in this lawsuit.

**Response: Defendant ABC objects to Interrogatory No. 9 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed**

**to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this interrogatory as this request seeks information in an impermissible form. Expert identification and release of expert reports and opinions are subject to the Courts scheduling order in this case and will be provided in accordance with that order.**

Interrogatory No. 10: Please identify all individuals known to you or your attorney who are not witnesses, but who you have reason to believe have knowledge pertinent to the events at issues as alleged in Plaintiff's petition, and provide a brief summary of the facts to which each such person could testify. For each person state the following:

a. Whether such person is affiliated with, or related to, or employed by any party (or its agents, servants, officers, or employees) to this lawsuit;

b. If any of the persons so listed in response to this interrogatory do not fit the characterization in subpart A above, please describe the nature of their involvement in this lawsuit;

c. Please explain and describe your understanding of their knowledge of such facts.

**Response: Defendant ABC objects to Interrogatory No. 10 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, defendant specifically objects to this interrogatory as cumulative or duplicative and the information can be obtained from another source that is more convenient and less burdensome. Further, this request is**

**cumulative or duplicative of Interrogatory No. 2.**

Interrogatory No. 11: Please state whether any of the individuals listed in the answers to the preceding interrogatories have given any statement(s) to you and, if so, please identify the individual giving the statement, identify the individual to whom the statement was given, the date of the statement, and whether or not the statement was written or recorded and, if it was written or recorded, identify the individual presently in possession of it.

**Response: Defendant ABC objects to Interrogatory No. 11 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights.**

Interrogatory No. 12: Please list each exhibit which you may attempt to introduce as evidence at the trial of this case, or which has been used or referred to by any expert witness on your behalf.

**Response: Defendant ABC objects to Interrogatory No. 12 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this interrogatory on the basis that it exceeds and violates the scope of permissible interrogatory questions. This interrogatory is further objected to because this Defendant ABC believes that the Plaintiffs are essentially requesting the responding party to "marshal" all of its available proof or the proof the party intends to offer at trial.**

Interrogatory No. 13: For each paragraph of Plaintiff's complaint which you deny the allegations, please explain and describe any facts which you believe may support each denial.

**Response: Defendant ABC objects to Interrogatory No. 13 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this Interrogatory as overly broad and unduly burdensome.**

**Privilege: Information that may be responsive to this request is privileged and has been withheld pursuant to the work-product protection or the attorney/client privilege.**

Interrogatory No. 14: Have you ever been involved in other legal action, either as a defendant or a plaintiff where allegations were raised concerning improper use of personal or financial data, or where credit report access issues were involved? If so, please state:

a) The date and place each such action was filed and identifying the other party or parties involved, the docket number of such actions, and the names of the attorneys representing each party;

b) A description of the nature of each such action; and

c) The result of each such action, whether there was an appeal, and the result of the appeal, and whether such case was reported and the name, volume number, and page citation of the report.

**Response: Defendant ABC objects to Interrogatory No. 14 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those**

**arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this Request as overly broad and unduly burdensome in that it is not limited in time and overly broad in scope. In addition, this Request is objectionable in that it is not relevant because it is not reasonably calculated to lead to the discovery of admissible information on the issues of liability or damages. Defendant ABC further objects on the grounds that the information sought is public information and Plaintiff has ample opportunity to discover this information from public sources.**

Interrogatory No. 15: Please explain and describe any complaints, reprimands or other negative feedback you have received about either: (1) any employee who engages in telephone calls or sends letters for the purpose of attempting to collect an alleged "debt" or to collect an alleged "account," regardless of the nature of the complaint(s) or reprimand(s); and/or any (2) any employee regarding the use of your direct access terminals or credit reporting services.

**Response: Defendant ABC objects to Interrogatory No. 15 on the basis that this Court does not have subject matter jurisdiction. Defendant ABC asserts that Plaintiff has agreed to arbitrate the claims brought in this action, Defendant ABC elects to exercise those arbitration rights, and Defendant ABC provides herein a copy of the arbitration agreement which provides Defendant ABC those rights. Further, Defendant ABC specifically objects to this Request as overly broad and unduly burdensome in that it is not limited in time and overly broad in scope. In addition, this Request is objectionable in that it is not relevant because it is not reasonably calculated to lead to the discovery of admissible information on the issues of liability or damages.**

and from credit reporting agencies and similar sources to any of our affiliates (that is, companies which are part of our Advanta corporate family); (c) include (without limitation) your name, Business name, address and other Account attributes in the information about our customers that we or our affiliates maintain and display electronically and otherwise (such as on a Website describing the businesses of our customers, or in published customer lists), and that we may make available from time to time by sale or otherwise to our affiliates and/or third parties; (d) provide responses and information about you, your application and the Account (which could include, but is not limited to, Account number, assigned and available Credit Limits, Account use, and rewards program information) to any co-brand vendor, service provider, affinity group or other person or entity who identified you as a member, customer or prospect or in which membership is an Account program benefit or who has contacted you on our behalf; and (e) provide responses and information about you, your application and the Account from our files and from credit reporting agencies and similar sources to any person or entity who we believe is conducting a proper inquiry. If you do not wish us to provide information to our affiliates or include you or your Business as in (b) or (c) above, you may advise us at our address in Paragraph 5.

23. ASSIGNMENT: We may sell or assign any or all of our rights and obligations in the Account and/or this Agreement without notice. You may not assign to anyone the Account or any of your rights or obligations under this Agreement.

24. STOPPING CONVENIENCE CHECK PAYMENTS: Due to the nature of Convenience Checks, we cannot effectively stop payment on them. Although we may attempt to do so in response to a request from you or for other reasons, and we may charge an Account fee in that connection, we have no liability for failure to do so.

25. AUTHORIZATIONS: We reserve the right to limit, from time to time and without notice, the amount we authorize for any Purchase, Cash Advance or other Account transaction. We are not responsible for any refusal by an ATM, merchant, financial institution or other person to honor your Card or Convenience Checks.

26. AUTOMATIC TELLER MACHINE CASH ADVANCES: Cash Advances may not exceed the least of the local ATM limit (if any), $750 per day, or the portion of your Credit Limit we authorize from time to time as available for Cash Advances. A receipt from an ATM may not indicate that the transaction was conducted with a Card. Regardless of the information contained on the receipt, any withdrawal at an ATM made with the Card will be processed by us as a Cash Advance.

27. TERMINATION OF ATM PRIVILEGES: We may terminate or block the use of any Card at any ATM, at our discretion, whenever we reasonably believe there is unusual activity on the Card or the Account or if you are in default under this Agreement.

28. OTHER PRODUCTS AND SERVICES: From time to time our affiliates and/or third parties may offer you additional features, products, services, and enhancements, including credit- and travel-related products and services (such as credit life, disability, or other insurance, debt cancellation coverage, common carrier travel insurance, registration for lost or stolen credit cards, emergency cash service and address change service), other features, products, services and enhancements. You understand that we are not liable for any aspect of those offers or those features, products, services, and enhancements, and they are the sole responsibility of the affiliates or third parties which offer them. You agree to hold us harmless from any claims, actions, or damages resulting from those offers or your application for or use of any of those features, products, services or enhancements, to the maximum degree permitted by applicable law. If you elect to apply for or accept or use any of the foregoing which involves charging a premium, fee or charge to your Account (whether you do so by expressly consenting, or by failing to "opt out" or cancel during an introductory or promotional period, or otherwise), you authorize us to post that charge to the Account. If any of the foregoing involve the payment or award of any rebate, reward, benefit, premium, prize or other items of value to you or on your behalf or on your Account, you acknowledge and agree that we have no liability for any taxes which may be assessed on any of those items of value or on the payment or award process and that you should consult your tax advisor as to the proper tax treatment of any such items.

29. CREDIT PROTECTION AND CREDIT INSURANCE: If you choose to become enrolled under a Credit Protection or Credit Insurance plan made available from us, our affiliate or a third party, an amendment to this Agreement (for Credit Protection) or a Certificate of Insurance will be issued to you. You agree that the applicable monthly charge or premium may be charged to your Account. The charge or premium will be computed as provided in the Credit Protection or Credit Insurance plan and will be reflected on your periodic billing statement. If you fail to make the required payment on your Account for a predetermined number of consecutive billing cycles, this Credit Protection or Credit Insurance may be canceled. You understand that the purchase of Credit Protection or Credit Insurance is voluntary and is not required for the extension of credit (although we may consider your interest and/or participation in such plans in evaluating your requests for credit and your account status), that we or our affiliate may receive a commission or other payment or benefit in connection with the purchase, that we have no fiduciary or other duty to you in connection with any aspect of the purchase or the coverage, and that you should consult your tax advisor as to the proper tax treatment of any benefits received under any such plan.

30. SPECIAL PROGRAMS: From time to time we may offer Special Programs (such as a promotional interest rate or fee waiver on certain transactions, or the privilege of skipping a periodic payment, or participation in Cash Back or other rewards programs) on the Account. Normal Account fees, charges and other terms apply to any Special Program unless inconsistent with the particular features or rules applicable to a Special Program offering. The features and rules of such programs may vary from time to time, and use of the Account in accordance with the features or rules of a Special Program constitutes agreement to those features and rules without formal modification or amendment to this Agreement. (Although Special Program features and rules, including (without limitation) Cash Back and other rewards program rules, are not terms of this Agreement, they are related to the use of your Account so as to be covered by the Arbitration provisions in Paragraphs 35 and 36.) If any of the foregoing involve the payment or award of any rebate, reward, benefit, premium, prize or other items of value to you or on your behalf or on your Account, you acknowledge and agree that we have no liability for any taxes which may be assessed on any of those items of value or on the payment or award process and that you should consult your tax advisor as to the proper tax treatment of any such items.

31. CONTROLLING LAW AND JURISDICTION: This Agreement shall be governed solely by and interpreted entirely in accordance with the laws of the State of Utah, except as (and to the degree that) such laws are superseded by the banking or other laws of the United States, regardless of where you reside or where the Business is located. We process the Account application, make the decision to open the Account and advance credit for you from our Utah offices. You agree that all terms, conditions, and other provisions relating to the method of determining the balance upon which the interest rate or finance charges are applied, and all other terms of this Agreement, are material to the determination of the interest rate. YOU CONSENT TO PERSONAL JURISDICTION IN THE STATE AND FEDERAL COURTS IN UTAH AND AGREE THAT ANY LAWSUIT PERTAINING TO THE ACCOUNT MUST BE BROUGHT ONLY IN SUCH COURTS IN UTAH, REGARDLESS OF WHO FILES THE SUIT, AND MAY BE MAINTAINED ONLY IN THOSE COURTS UNLESS AND UNTIL ANY PARTY ELECTS ARBITRATION PURSUANT TO THE ARBITRATION PROVISION IN THIS AGREEMENT.

32. SEVERABILITY: Except for Paragraph 36 which has its own severability clause, each provision in this Agreement shall be interpreted so as to be effective and valid to the maximum extent possible under applicable law, and any provision which is found to be prohibited or invalid under applicable law shall be deemed ineffective only as to the extent of that prohibition or invalidity, without invalidating the remainder of the provision or any other provisions of this Agreement.

33. ADDING AND DELETING CARDMEMBERS: We may choose to permit the addition of Cardmembers on the Account other than the Signing Individual, and if we do so, the references in this Agreement to such additional Cardmembers apply. You and any other present or proposed Cardmembers will follow and complete all procedures and forms required by us to add, delete or change Cardmembers. In the event of the deletion of a Cardmember, a minimum of five (5) business days is required and you, the Business and any non-affected Cardmembers will make all reasonable attempts to obtain the deleted Cardmember's Card and unused Convenience Checks. Notwithstanding the details of any notice given or other communications, the Signing Individual and the Business are liable for all Account charges made by the deleted Cardmember until we have a reasonable opportunity to restrict access to the Account by the deleted Cardmember.

34. CARD REMAINS OUR PROPERTY: You understand that each Card issued by us remains our property and we can revoke your right to use it at any time. We can do this with or without cause and with or without giving you notice. If your Card is revoked or expires you must return it upon our request. Also, if the Business or any entity or person from whom you request credit or with whom you intend to make an Account transaction asks you to surrender an expired or revoked Card, you must do so. You may not use the Card after it has expired, after it has been revoked, or after your employment or other connection with the Business has been discontinued, or after the Business ceases to exist or to operate as a going concern.

35. ARBITRATION DISCLOSURE: By applying for credit with us or using your Account, you agree that if a dispute of any kind arises out of your application for credit or out of the existence or use of this Agreement or your Account, either you or we or any other party that may be involved can choose to have that dispute resolved by binding arbitration. If arbitration is chosen, it will be conducted pursuant to the Code of Procedure of the National Arbitration Forum. If you have questions about the National Arbitration Forum, or want to see their rules and forms, you can call them toll-free at 1-800-474-2371 or visit their Website at www.arbitration-forum.com. IF ANY PARTY TO ANY SUCH DISPUTE CHOOSES ARBITRATION, NEITHER YOU NOR WE OR ANY OTHER PARTY WILL HAVE THE RIGHT TO LITIGATE OR APPEAR IN COURT BEFORE A JUDGE OR JURY, OR TO ENGAGE IN DISCOVERY EXCEPT AS PROVIDED IN THE ARBITRATION RULES, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS. THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. IT IS IMPORTANT THAT YOU CAREFULLY READ AND UNDERSTAND THE ARBITRATION PROVISION (PARAGRAPH 36 BELOW) BEFORE APPLYING TO US FOR NEW CREDIT OR USING OR CONTINUING TO USE YOUR ACCOUNT.

36. ARBITRATION PROVISION: Any claim, dispute or controversy (whether stated in contract, tort or otherwise) now in existence or arising in the future relating to the Account or this Agreement or the relationships that led up to or result from this Agreement, including, without limitation, any advertisements, promotions, and oral or written statements related to your Account, any application for credit and any prior agreements between you and us, and any claim concerning the applicability or validity of this Agreement (with the exception noted in the Important Notes below concerning claims relating to the applicability or validity or enforceability of all or any portion of this Arbitration Provision), no matter by or against whom the claim is made, whether by or against either you or us or (to the full extent permitted by law) by or against any involved third party or employees, agents, representatives or assigns of either you or us or that third party (a "Claim"), shall, at the election of you or us or any such third party, be resolved by binding arbitration pursuant to this Arbitration Provision conducted by the National Arbitration Forum (the "NAF"), a neutral arbitrator headquartered in Minneapolis, Minnesota which provides arbitration services nationwide. Any arbitration pursuant to this Arbitration Provision shall be conducted under the NAF Code of Procedure in effect at the time a Claim is filed (the "Code"), which Code is incorporated herein by reference. (Notwithstanding anything to the contrary contained in the Code, for any Claim involving an amount equal to or greater than $75,000, either you or we or any such third party may require that the Claim be heard by a panel of three arbitrators, selected according to the Code. A single arbitrator will decide any Claim involving an amount less than $75,000.)

Arbitration can be elected at any time on any Claim, regardless of whether a lawsuit has been filed in court (unless that suit has resulted in a judgement), and a party who has asserted a Claim in a lawsuit in court may elect arbitration with respect to that Claim and/or to any Claim(s) subsequently asserted in that lawsuit by any party. That arbitration proceeding can only decide your or our Claim(s). There shall be no authority for any Claim to be arbitrated on a class action or representative basis or as a "private attorney general" matter, and any arbitration under this Arbitration Provision may not consolidate or join claims of other persons no matter how similar they may be to your and/or our Claim(s). An arbitrator may award a prevailing party its fees and costs pursuant to applicable law. Any arbitration hearing that you attend will take place in the federal judicial district in which you reside. NAF rules and forms, including a schedule of fees, may be obtained by calling toll-free at 1-800-474-2371, or by visiting the NAF's website at www.arbitration-forum.com. At your request, we will advance the first $250 of the filing and hearing fees for any Claim which you may file against us, and we will also consider any additional request that we advance additional filing and hearing fees or other costs for you because of your financial circumstances. The arbitrator will decide whether we or you will ultimately be responsible for paying those fees and other costs. This Arbitration Provision relates to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 USC Sections 1-16 (the "FAA"). The arbitrator shall apply relevant law and provide written, reasonable findings of fact and conclusions of law, as provided by the Code, and judgement on an arbitration award may be entered in any court having jurisdiction. This Arbitration Provision shall survive repayment of your extension of credit and termination of your Account.

Important Notes: If any portion of this Arbitration Provision is deemed invalid or unenforceable under the FAA or any other applicable law or the Code, that fact will not invalidate the remaining portions of this Arbitration Provision, except as follows: If the portion of this Arbitration Provision deemed invalid or unenforceable includes the prohibitions on the arbitration of claims on a class or representative basis and/or the prohibitions on the consolidation or joinder of similar claims, then this Arbitration Provision shall be deemed to be invalid and unenforceable in its entirety. Any claim or dispute concerning the applicability or validity or enforceability of all or any portion of this Arbitration Provision, including (without limitation) its prohibitions on the arbitration of claims on a class or representative basis and its prohibitions on the consolidation or joinder of similar claims, shall be heard and decided only by a court of competent jurisdiction and not by any arbitrator under this Arbitration Provision.

# ADVANTA BUSINESS CARD AGREEMENT

THIS DOCUMENT, called the Advanta Business Card Agreement (or the "Agreement"), IS THE AGREEMENT BETWEEN YOU AND US THAT GOVERNS YOUR ACCOUNT. IT MAY BE SUPPLEMENTED BY INFORMATION IN OTHER DOCUMENTS WE ISSUE (SUCH AS PERIODIC ACCOUNT BILLING STATEMENTS AND THE MATERIALS WHICH ACCOMPANY NEW OR REPLACEMENT CARDS) WHICH WE IDENTIFY AS SUPPLEMENTING THE TERMS OF THIS AGREEMENT OR AS AMENDMENTS TO THIS AGREEMENT, BUT IT MAY NOT BE CONTRADICTED BY OTHER DOCUMENTS WHICH ARE NOT SO IDENTIFIED OR BY EVIDENCE OF ANY ALLEGED ORAL AGREEMENT. You should read this Agreement carefully and keep it for your records. By accepting or using an Advanta Business Card or an Advanta Business Card Account, you are agreeing to everything written in this Agreement. Your use of the Card, the Account and any Account service or product is governed by this Agreement as it may be amended from time to time.

In this Agreement "you", "your", "yours", "yourself" and "Cardmember" mean the person named on the Advanta Business Card, the Signing Individual, the Business and any other legal entity or person who is contractually liable for, has signed or submitted an application for, has used or has permitted others to use a Card or the Account. "Signing Individual" means the owner, officer, employee or agent of the Business who authorized the opening of the Account and the issuance of Cards to Cardmembers and for whom we opened the Account. "Issuer", "we", "us" and "our" refer to Advanta Bank Corp., its successors and assigns. "Business" means the proprietorship, partnership, corporation or other business entity identified at the time we opened the Account for the Signing Individual and in whose name the Account is established, and its successors and assigns. "Card" and "Cards" mean the business credit cards issued by us to access your Account. "Convenience Checks" means any checks, drafts or other instruments that we issue or provide for your use, or that we honor, in charging your Account. "Cash Advance" means a cash advance obtained from the Account through any participating affiliated automatic teller machine ("ATM") or any financial institution or other establishment authorized to process or grant cash advances and also includes, for purposes of computation of finance charges, all Convenience Checks and other cash-equivalent transactions including (but not limited to) Balance Transfers, taxes, court costs, fines, insurance premiums, money orders, savings bonds, wire transfer orders, charitable and political contributions, and other transactions with cash-equivalent merchants. "Balance Transfer" means any transfer made by us, at your request and direction, of all or part of a balance from another account to your Account but does not include payments you make (using Convenience Checks, EFT services or otherwise) directly on that other account. "Account" means the account that we open for you. "Purchase" means a purchase of goods or services made with a Card or charged to the Account, and also includes any Account transaction that is not a Cash Advance, Convenience Check or Balance Transfer. "New Balance" means the entire aggregate balance shown as due on a periodic billing statement. "Credit Limit" has the meaning stated in Paragraph 2. "Amounts Due" has the meaning stated in Paragraph 5. "Billing cycle" and "Billing Cycle Closing Date" have the meanings stated in Paragraph 9. "Good standing" has the meaning stated in Paragraph 11. "Merchant Claims" has the meaning stated in Paragraph 15. "Affiliates" has the meaning stated in Paragraph 22. "Claim" has the meaning stated in Paragraph 36.

By applying to us for credit, or by accepting our offer of credit, or by using the Account or any Card and/or Convenience Checks, you (a) represent that you are at least 18 years of age, a US citizen or legal US resident and either a proprietor or an authorized representative, partner, officer, employee or agent of a business which you have identified to us as the Business; (b) request that an Account be opened for you, pursuant to that authorization, in the name of the Business; (c) request that Cards be issued on that Account as indicated in the application and any other requests; (d) authorize the receipt, reporting and exchange of credit information on the Signing Individual, the Business and all Cardmembers; (e) agree to be liable for all charges to the Account as provided in this Agreement; (f) agree to be bound by the terms and conditions of this Agreement; and (g) represent and agree that THE ACCOUNT AND ALL CARDS, CONVENIENCE CHECKS, PURCHASES, CHARGES, BALANCE TRANSFERS AND CASH ADVANCES ARE TO BE USED ONLY FOR BUSINESS PURPOSES (INCLUDING COMMERCIAL, INDUSTRIAL AND PROFESSIONAL PURPOSES) AND MAY NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. And you understand and agree that although we may from time to time make disclosures and/or adopt procedures relating to your Account which are consistent with laws applicable to consumer-purpose accounts, our doing so does not convert your Account into a consumer-purpose account or create any requirement that we otherwise comply with those, or any other, laws applicable to consumer-purpose accounts.

1. ACCOUNT ACTIVATION: This Account is established to enable you to obtain goods and services from businesses and other vendors (other than the Business) that honor Cards and Convenience Checks; to request Balance Transfers from other business-purpose accounts; and to receive Cash Advances through participating ATMs, financial institutions and other establishments authorized to process and grant Cash Advances. FOR YOUR AND OUR MUTUAL CONVENIENCE, WE HAVE OPENED THIS ACCOUNT AND ISSUED CARDS AND CONVENIENCE CHECKS TO YOU WITHOUT GETTING THIS AGREEMENT SIGNED BY YOU. WE ARE SENDING YOU A COPY OF THIS AGREEMENT FOR YOUR REVIEW UPON THE OPENING AND/OR CONTINUED USE OF THE ACCOUNT AND FOR YOUR RECORDS. WE HAVE GIVEN YOU AN OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH US BEFORE YOU USE THE ACCOUNT. YOU AUTOMATICALLY ACCEPT AND AGREE TO THE TERMS OF THIS AGREEMENT BY MAKING A PURCHASE, WRITING A CHECK, REQUESTING A BALANCE TRANSFER, TAKING A CASH ADVANCE OR OTHERWISE USING THE CREDIT OFFERED ON THE ACCOUNT, EVEN THOUGH THIS AGREEMENT WILL NOT BE SIGNED BY YOU. IF YOU DO NOT WISH TO BE BOUND BY THIS AGREEMENT OR TO ACTIVATE THE ACCOUNT, CUT YOUR CARD IN HALF AND RETURN IT TO US AT OUR ADDRESS SHOWN IN PARAGRAPH 5.

2. CREDIT LIMIT: We will establish a maximum for the amount of credit available on the Account (the "Credit Limit"). The Credit Limit is ordinarily specified in the Account acceptance mailer and on periodic billing statements. Your outstanding balance is not to exceed the Credit Limit. If you exceed your Credit Limit, we can still charge you for all Purchases, Cash Advances and other transactions without giving up any of our rights, we can assess an overlimit fee, and we can require that you immediately pay to us any amount in excess of the Credit Limit. If you ask us to extend the Credit Limit, either permanently or temporarily, we have no obligation to do so; however, we may make such an extension if we choose without giving up or waiving any of our rights, and it does not mean that we have to honor other uses which would cause the Credit Limit to be exceeded. From time to time, we may temporarily or permanently increase or decrease the Credit Limit, as we deem appropriate. We may also establish limits from time to time on the amounts we will authorize for Purchases, Balance Transfers, Convenience Checks and Cash Advances (in the aggregate or for any one or more transactions) and/or the amount of your Credit Limit available for use (by imposing a Credit Limit hold as described in Paragraph 6 or otherwise), with the result that in circumstances where these limits would be exceeded, Account transaction authorizations could be declined and/or Convenience Checks could be dishonored even if you have not reached or exceeded your Credit Limit.

3. FOREIGN CURRENCY AND INTERNATIONAL TRANSACTIONS: Account transactions made in countries other than the US and/or in currencies other than US Dollars are converted to US transactions in US Dollars under the regulations and procedures for such matters established and in effect from time to time by our

card issuer membership organizations. Those regulations and procedures currently provide that the currency conversion rate to be used is either (a) a wholesale market rate, or (b) a government-mandated rate in effect on the conversion processing date or on the previous day. Any such conversion may occur on a date other than the transaction date, and the currency conversion rate may be different from the rate in effect on the transaction date and from the rate available to the membership organization. We do not determine the currency conversion rates or receive any portion of them. We may charge you a separate fee in connection with such transactions.

4. CARD AND CONVENIENCE CHECK ISSUANCE: All Cards and Convenience Checks are issued to Cardmembers pursuant to this Agreement. We can cancel your authority to use the Cards and Convenience Checks at any time without notice. You must discontinue using and return all Cards and unused Convenience Checks to us at our request. Only Convenience Checks supplied by the Issuer shall be honored. All Convenience Checks are treated as Cash Advances for the purpose of computing finance charges regardless of how they or their proceeds are used, and may not exceed the portion of your Credit Limit we authorize from time to time as available for Cash Advances. Convenience Checks paid by us are not returned to you. If we dishonor a Convenience Check for any reason, we may assess a Convenience Check dishonor fee. If we offer you the opportunity to design your Card with a business name, design and/or logo, you warrant and represent that you are the lawful owner or licensee or user of any such name, design and/or logo which you provide, and that you will indemnify us and our affiliates for any claim arising out of the use of that name, design and/or logo in connection with your Cards or your Account.

5. LIABILITY: "Amounts Due" means the total of the following items remaining unpaid on the Account at any given time: all Purchases, Balance Transfers, Convenience Checks, Cash Advances and other transactions, plus applicable finance charges, fees and other charges, minus any credits and payments. The Business promises to pay us all Amounts Due in connection with all Cards and Convenience Checks issued to the Business, to the Signing Individual and to any other Cardmembers, or otherwise requested or charged with respect to the Account. The Signing Individual, in addition to and jointly with the Business, promises to pay us all Amounts Due in connection with all Cards and Convenience Checks issued to the Business, to the Signing Individual and to any other Cardmembers, or otherwise requested or charged with respect to the Account. THE SIGNING INDIVIDUAL IS PERSONALLY LIABLE FOR ALL SUCH AMOUNTS DUE. Each Cardmember and other person or legal entity who uses a Card or a Convenience Check, in addition to and jointly with the Business and the Signing Individual, promises to pay us all Amounts Due in connection with all Cards and Convenience Checks issued to such Cardmember or otherwise requested or used by him or her with respect to the Account, even though periodic billing statements and other Account materials may be sent to the Business or to the Signing Individual and not directly to such Cardmember or other person. EACH CARDMEMBER AND OTHER PERSON IS PERSONALLY LIABLE FOR ALL SUCH AMOUNTS DUE. THE SIGNING INDIVIDUAL AND EACH CARDMEMBER UNDERSTAND THAT A 'PERSONAL LIABILITY' MEANS AN INDIVIDUAL OBLIGATION WHICH MUST BE PAID BY HIM/HER EVEN IF THE BUSINESS BECOMES INSOLVENT OR INACTIVE OR CEASES TO EXIST OR OTHERWISE FAILS TO PAY US OR HE/SHE DISCONTINUES HIS/HER EMPLOYMENT OR OTHER CONNECTION WITH THE BUSINESS. The Business's liability for Amounts Due, and the Signing Individual's personal liability for Amounts Due, includes liability for all transactions and charges made by anyone whom the Business, a Cardmember or the Signing Individual allows to use the Account. Each other Cardmember's personal liability for Amounts Due includes liability for all transactions and charges made by him or her and anyone whom he or she allows to use the Account. We may collect from or bring a legal claim against the Signing Individual, the Business or any Cardmember, and/or we may elect to give up our rights to collect from or bring a legal claim against the Signing Individual, the Business or any Cardmember, without giving up any of our rights against any other person or entity. This Agreement is binding on the Business, its successors and assigns. It is also binding on the Signing Individual and each individual Cardmember and his/her successors, heirs, personal representatives and anyone to whom he/she assigns his/her assets. To the extent not prohibited by applicable law, you agree to pay all collection costs, including (but not limited to) attorneys fees of 25% of any amount we bring a legal claim to collect. You will pay a smaller amount if a smaller amount is ruled appropriate or is provided for by applicable law.

You agree to be liable for the repayment of everything owed by you on the Account even if we do not follow all of the legal procedures (such as diligence, demand, presentment and notice and protest of dishonor) which we might be required to follow in the absence of this waiver. In addition, you consent to any continuance that we give with respect to time of payment or amount of payment that in any way may impair any of our rights under this Agreement. No waiver, consent or approval by us will be effective unless it is in writing and signed by our authorized officer or representative. Improper or negligent acts, including acts of omission, with respect to handling any Card or Personal Identification Number ("PIN") may result in liability to you and the Business. You may be liable for the loss, theft or unauthorized use of your Card and Convenience Checks. Additionally you may be liable for losses resulting from negligent actions by you, your agents or authorized Cardmembers. If you believe that your Card or Convenience Checks are lost, stolen, or being used in an unauthorized manner, you agree to notify us immediately, either orally or in writing (if by telephone, you must confirm the telephone call in writing). You can call us toll-free at: 1-800-705-7255 and/or write us at: Advanta Bank Corp., Security Division, P.O. Box 30715, Salt Lake City, Utah 84130-0715. You will not be liable for any unauthorized use of your Card which occurs after notifying us, and so long as negligence or improper conduct is not a factor, your liability for unauthorized use occurring prior to notification will not exceed the lesser of $50 or the amount of money, property or services obtained by such use. HOWEVER, IF ANY CARDMEMBER IS A BUSINESS OR ORGANIZATION OR IS AN EMPLOYEE OF A BUSINESS OR ORGANIZATION WHICH PROVIDES CARDS ISSUED BY US TO TEN (10) OR MORE OF ITS PARTNERS, PRINCIPALS OR EMPLOYEES, THEN THAT BUSINESS OR ORGANIZATION'S LIABILITY FOR UNAUTHORIZED USE OCCURRING PRIOR TO NOTIFICATION IS UNLIMITED.

6. PAYMENT: You agree to pay all Amounts Due on the Account until paid in full. You agree to make all payments in US Dollars payable through a US financial institution, either by check or money order payable to us at the location and in the manner specified on your periodic billing statement or in any other manner (such as by electronic fund transfer or wire transfer) that we agree to and provide procedures for. You agree not to make any payment on the Account with a Cash Advance, Convenience Check or other transaction using funds charged to or drawn from the Account or any other account you have with us or our affiliates, except transfers of funds from deposit or investment accounts that we agree to and provide procedures for. (We may process your payment check by electronically debiting your account at your bank for your check amount and transmitting check information (such as check amount, routing number and check number), or a digital image of the check, or some other substitute instrument, rather than the actual check, to your bank, and your bank's record of that payment may appear as an automatic debit, substitute check or other electronic transaction rather than a negotiated paper check.) Application of payment and credit amounts to the various components of any Amounts Due (including transactions posted but not yet billed) will be at our discretion, will ordinarily include (among other things) application of payments and credits to fees, finance charges and insurance premiums before principal amounts, and to components bearing lower interest rates (such as introductory or promotional rates) before components bearing higher interest rates, and may vary from time to time.

You can pay your New Balance in full each month or you can pay it in monthly installments. If you pay in installments, you must pay at least the minimum payment shown on your periodic billing statement. The minimum payment due is normally the sum of (1) 2.25% of the New Balance or $10, whichever amount is greater, plus (2) any amount that is past due, plus (3) any newly-accrued fees and charges we elect to include. If the New Balance is less than $10 you pay only the balance. In addition, if the New Balance minus the minimum payment due exceeds the Credit Limit, the difference between those amounts may be added to your minimum payment due. (We may change your minimum payment due for any billing cycle to a different minimum payment which could include the sum of (1) the finance charges assessed for that billing cycle, plus (2) any newly-accrued fees and charges we elect to include, plus (3) any amount that is past due, plus (4) an amount we require for Account amortization; or any other combination of Account elements and amounts we may select. We may do so if your Account is closed to new transactions or no longer in good standing, or in any other circumstance in which we determine that such a change is appropriate. We disclose the amount of any such changed minimum payment to you on your periodic billing statement.) And we may elect to round off, round up or truncate any minimum payment and/or any of the elements of any minimum payment calculation. Finance charges continue to be assessed during any period when there is an outstanding Account balance. Payments and credits posted after your Payment Due Date or totaling less than the entire New Balance reduce the balance owing as of the date posted (and the Average Daily Balance), but do not avoid finance charges. Payments greater than the minimum payment due and/or additional payments may be made at any time without a prepayment penalty but do not relieve you of your obligation to pay the next succeeding periodic payment(s).

We can accept late or partial payments, as well as payments that are marked "payment in full" or with other restrictive endorsements, without losing any of our rights under this Agreement or being bound by any such endorsements. Similarly, we are not bound by any proposal you may make in connection with the settlement of any Account balance or any other matter, whether or not it accompanies an Account payment and whether or not it contradicts or purports to amend any provisions of this Agreement including (but not limited to) this Paragraph 6 and whether or not it purports to become effective without our express agreement (that is, by "negative option" based upon such things as the passage of time or our failure to object or respond), unless we specifically and affirmatively agree to be bound by it in a writing signed by our authorized officer or representative. Communications regarding disputed charges and settlement proposals must be directed to the address for such matters shown on your periodic billing statement.

Account payments are to be mailed to the address for payments shown on your periodic billing statement. Payment must be received by us at that address on or before the specified time on the Payment Due Date stated on your periodic billing statement, and must conform to any specific requirements for making payment which appear with or in your billing statement. Payments tendered to and accepted by us or our agent at a location other than the address stated on your periodic billing statement are not effective until received by us at the address specified. If a payment is returned to us unpaid or dishonored for any reason, or if your Account is otherwise in default, or if we otherwise deem appropriate, we may impose a Credit Limit hold on one or more payments we receive thereafter on your Account such that although the payment will decrease your outstanding balance as of the date the payment is posted, it will not increase or restore your available Credit Limit for a period of up to twenty-one (21) days after posting.

We are not required to accept any payment in an amount which exceeds your outstanding Account balance or which would produce a credit Account balance. But if we accept such a payment or otherwise generate a credit Account balance, your available Credit Limit is not increased by the amount of that overpayment or credit balance, and we are not required to authorize or process transactions for amounts in excess of the Credit Limit, or to treat that overpayment or credit balance as a deposit or interest-bearing item, or to issue a refund or credit of any portion of that overpayment or credit balance except in response to your express request that we do so (or otherwise as provided by applicable law) when doing so would be consistent with principles of safe and sound banking.

7. FEES AND CHARGES: See Supplement containing additional Terms on fees and charges.

8. FINANCE CHARGES: See Supplement containing additional Terms on finance charges.

9. BALANCE COMPUTATION METHOD: Average Daily Balances are calculated separately for Cash Advances, for Purchases and for any other Account components eligible for introductory, promotional or other separate interest rates. We calculate each such Average Daily Balance as follows: For each day in the billing cycle we take that day's beginning balance (an amount that includes accrued and/or unpaid finance charges, fees and other charges from previous billing cycles) and add any new transactions and other debits. We also add an interest amount equal to the previous day's ending balance multiplied by the applicable Daily Periodic Rate. We then subtract any payments or credits posted that day. This gives us the daily balance. We then add all of the daily balances (excluding days which end with a credit balance), and divide each sum by the number of days in the billing cycle. This gives us the Average Daily Balance. We then combine the Average Daily Balances for Cash Advances, Purchases and any other separately-calculated Account components to get the Account Average Daily Balance. All fees charged to your Account are added to the appropriate balance.

A "billing cycle" is the recurring period of time, normally approximately 30 days, during which Account transactions, charges and credits are accumulated and for which a periodic billing statement is issued. The last day of a billing cycle is its Billing Cycle Closing Date. Billing cycles do not normally coincide with calendar months, and a billing cycle that is identified or labeled as the billing cycle for a particular calendar month or other period is the cycle which has its Billing Cycle Closing Date in that month or period. (For example: Your Account's "January billing cycle" is the billing cycle which has its Billing Cycle Closing Date in January.)

10. EVENTS OF DEFAULT: You are in default under this Agreement if any of the following occur: (a) you do not make the required minimum periodic payment on the Account in the manner and by the time of day on the Payment Due Date that are specified on your periodic billing statement; (b) you fail to pay as agreed or otherwise default on any other obligation you have with us, with any of our affiliates or with any other creditor; (c) you break any of your promises under this Agreement; (d) you become generally unable to pay your debts, or cease doing business as a going concern, or discontinue your employment or other active role with the Business; (e) any other creditor tries by legal process to take money of yours in our possession; (f) you provide us with any false or misleading information or signatures in connection with the Account or its credit application or any other account with us; (g) you die; (h) the filing of a petition or starting of other proceedings under the federal Bankruptcy Code or any state insolvency statute by or against you; (i) the Credit Limit of the Account is exceeded; (j) we determine that you present a risk of future non-payment of your Account obligations; (k) the basis on which we determined your creditworthiness and eligibility for your Account terms has changed; (l) your Account is closed for any reason, or you fail to use your Account for new transactions for a number of consecutive billing cycles determined by us; (m) you communicate, or attempt to communicate, with us or any of our employees or agents in a manner that we deem to be inappropriate or unauthorized (such as by abusing our employees, or attempting to perform Account transactions or use our Websites or other support facilities other than in the manner contemplated by our systems and procedures); or (n) you use, or attempt to use, a Card or the Account for any transaction by which you purport to purchase goods or services from the Business, or which has no apparent legitimate business purpose, or which would constitute fraud or a violation of applicable law or regulatory guidance or a violation of any business's merchant bank card services agreement and/or of applicable card issuer membership organization rules.

11. RIGHTS UPON AN EVENT OF DEFAULT: If any event of default occurs, we may do any or all of the following, without advance notice to you: (a) declare the outstanding balance owing on the Account to be immediately due and payable; (b) allow you to repay the Account subject to the terms and conditions of this Agreement; (c) refuse to pay any Convenience Checks or other withdrawals or charges; (d) immediately terminate Account credit privileges; (e) suspend the availability of the Account and/or of any of our account support facilities (such as online Website access); (f) adjust your Account pricing and/or the formula we use to calculate the minimum payment due on the Account, either as set out in Paragraphs 6 and 8 or otherwise; (g) consider the Account no longer in "good standing", for purposes of participating in Account programs and features (such as Cash Back and other rewards programs), eligibility for introductory and/or promotional rates and/or offers, or otherwise; (h) impose the Credit Limit hold as set out in Paragraph 6; (i) cancel your Credit Protection and/or Credit Insurance; (j) offset any outstanding balance owing on the Account with funds from any deposit or investment account you have with us or our affiliates (subject to the terms of any such account and to applicable law). In evaluating any event of default, we may consider the length of time your Account has been open; the extent, seriousness and timing of that event; and other factors relating to your Account use and performance. Upon our demand, you will immediately pay the outstanding Account balance in full and return all Cards and unused Convenience Checks.

12. AMENDMENT/CHANGE IN TERMS: We have the right to change, amend, add and delete terms of this Agreement, including (without limitation) changes that affect existing provisions on balances, rates, fees and/or finance charges as well as changes that add new provisions not directly related to previously-existing provisions, upon written notice as required by applicable law. Any changed, amended or added fee, charge, interest rate, finance charge or minimum payment amount (whether increased or decreased) or other Account term or Agreement provision shall be effective as to both the outstanding Account balance and future transactions unless our notice specifically provides otherwise. We consider, and you agree, that you have accepted any change if you keep or use the Card or the Account after the effective date of the change.

13. BILLING STATEMENTS AND ERRORS: We send periodic billing statements to the Business and/or to the Signing Individual at their address(es) shown in our records (but we have no obligation to send multiple or duplicate statements). We may, at our option, elect to send periodic billing statements electronically. We may elect not to send a periodic statement for any billing cycle in which there is no debit or credit Account balance of more than $1, or no Account transactions or charges, or no finance charge assessed. You agree to notify us if you do not receive any particular statement. Unless you notify us in writing of any alleged errors on any statement within 60 days of the issue date appearing on the statement, we will consider the statement correct for all purposes.

14. TERMINATION OF ACCOUNT AND REDUCTION OF CREDIT: We may terminate the Account or reduce the Credit Limit at any time upon sending written notice to you at the last address shown on our records (which notice need not be in advance), and regardless of whether you are in default under this Agreement. Your rights under the Account will be terminated or modified accordingly. If the Account is terminated or the Credit Limit is reduced, you must continue to make each required periodic payment until the Account is paid in full unless payment of the Account balance is demanded. The Account, until paid in full, continues to be subject to any amendment made to this Agreement pursuant to Paragraph 12.

15. MERCHANT CLAIMS: You agree to assert all defenses, complaints, rights and claims ("Merchant Claims") which you may have relating to goods or services purchased through the use of the Account only against the merchant or other person selling or providing those goods or services and not against us. You agree that regardless of the existence and/or the nature of any Merchant Claims, you are liable to us as this Agreement provides and without any exception, and we are not responsible for any Merchant Claims you may have.

16. RETENTION OF DRAFTS: You agree that at the time you obtain a Cash Advance (except for ATM transactions) or make a Purchase or other transaction, you will sign and retain a copy of the draft or other document which evidences the transaction. The absence of such a draft or document, or the absence of your signature, does not relieve you from liability for an amount properly charged on the Account.

17. COLLECTION: You agree that if you do not pay on the Account as agreed or are otherwise in default, you will accept telephone calls from us or on our behalf at your home and your place of business regarding collection of amounts owed on the Account. You understand that those calls may be automatically dialed and a recorded message may be played. You agree such calls are not "unsolicited" calls for purposes of applicable law. You also agree that except to the extent prohibited by applicable law, we and/or our representatives may also communicate with you by other means including (without limitation) fax or telecopier, Internet, US mail, e-mail, courier delivery, and personal visit.

18. ACCOUNT USE AFTER TERMINATION: Use of the Account and/or your Card and/or Convenience Checks after notice of revocation is fraudulent and may subject you to civil liability and/or to prosecution.

19. CANCELLATION: The Signing Individual or his/her successor can cancel the Account by delivering to us written or oral notice that you wish to do so. Cancellation of the Account by any such person operates to cancel the Account as to all of you. Upon giving us your cancellation notice, you agree that you will not use the Account to obtain additional credit or for any other purpose, and that you will promptly destroy all Cards and unused Convenience Checks by cutting them in half and returning to us at the address in Paragraph 5. Cancellation of the Account does not affect your obligation to pay any Amounts Due and owing on the Account at the time of cancellation or properly accruing thereafter, and you continue to be bound to make payments pursuant to this Agreement until the Account is paid in full. The Account, until paid in full, continues to be subject to any amendment made to this Agreement pursuant to Paragraph 12.

20. ADDRESSES - NOTICES - ACTIONS: You agree to keep us informed of your address and how to contact you. If you move, you will write your new address and telephone number on the return stub of the periodic billing statement or give us some other prompt notice so we may change our records. You agree that whenever we are required to give you notice we may conclusively presume that we have given it to you if we mail it to you at the last address known to us as shown on our records, whether as part of a periodic billing statement or otherwise. All notices regarding the Account can be given to any Cardmember and when given are effective as to all Cardmembers, and any action taken or agreement made by any such Cardmember shall bind all Cardmembers.

21. CREDIT INVESTIGATION AND REPORTING: You authorize us to make whatever credit investigation we believe is proper to evaluate your credit, financial standing and employment including (but not limited to) ordering and receiving reports from credit bureaus, credit exchanges and similar agencies on the Signing Individual, the Business and any Cardmembers. We may do so at any time and from time to time a) before the Account is opened; b) while the Account remains open; and c) after the Account is closed so long as any Amounts Due remain unpaid and/or any dispute, disagreement or legal proceeding which involves us and any of you remains unresolved. You authorize us to report and exchange our credit experience with you to, and respond to inquiries from, credit bureaus, credit exchanges and similar agencies as well as other creditors who we reasonably believe are (or are considering) doing business with you. (This means we may report information, including negative information, about your Account to credit bureaus, and any late or missed payments or other events of default on your credit obligation under this Agreement may be reflected in your credit report.) You authorize your employers (past, present and future) and other references to release and/or verify information to us at any time. You agree to promptly provide to us such financial and other information about yourself and the Business and/or its principals (corporate officers, general partners or owners, as applicable) as we may request from time to time, and permit us to inspect, confirm and copy your books and records at any time during normal business hours. You also agree to promptly provide us such information and documents about the Business's continued existence and good standing and your employment or other connection with it, as well as its continuing authority to borrow, as we may request from time to time.

22. ACCOUNT INFORMATION: You authorize us to (a) release information from our records about you and the Account in response to any summons, request or subpoena issued by any municipal, state or federal agency or court or by counsel for a party to any litigation; (b) provide information about you and the Account from our files